# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

DALE ELLINGTON                                                    PLAINTIFF

v.                              No. 4:23-cv-284-DPM

WESTLAKE FINANCIAL SERVICES                       DEFENDANT

## ORDER

Westlake Financial Services seeks summary judgment on Dale Ellington's remaining claims under the Fair Debt Collection Practices Act and the equivalent Arkansas statute. *Doc. 79.* All those claims depend on Westlake being a debt collector. That depends, in turn, on whether Ellington was in default on a car loan when Westlake received it. 15 U.S.C. § 1692a(6)(F)(iii); Ark. Code Ann. § 17-24-502(5)(D)(vi)(c). Posh Automotive sold Ellington a 2008 Mustang on credit using a retail installment contract and security agreement. The parties' contract contained a default provision.

> **Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
>
> - You fail to perform any obligation that you have undertaken in this contract.
> - We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs, reasonable attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract, to the extent permitted by law.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

*Doc. 79-2 at 7.*

The Court views the facts in the light most favorable to Ellington.

*Anderson v. Rugged Races, LLC*, 42 F.4th 955, 958 (8th Cir. 2022).

A timeline illuminates the parties' dealings.

- January 2021 ..........Ellington bought the Mustang from Posh with a loan from the dealership. At first, he used an insurer that Posh wouldn't work with.  *Doc. 86-2 at 67.*

- February 2021 ........Ellington made the first of ten monthly payments to Posh.

- April and July 2021 .................Posh received notices that Ellington's insurance on the Mustang had lapsed. Eventually, he got coverage through his mother's policy, which Posh accepted.  *Doc. 79-3 at 55;  Doc. 86-2 at 69 & 78.*

- October 2021 ..........Ellington made two payments to Posh.  The second payment was for November.  That was the last monthly payment he made to Posh.

- 23 October 2021 ..... Ellington was arrested after a traffic stop. The Mustang was impounded. The charges were eventually dropped and Ellington got the Mustang back after paying a $200 impound fee. *Doc. 79-3 at 50.*

- Before and on
  25 October 2021 ..... Ellington talked to Carissa Hill, owner of Posh, and Peanut, an employee, about his insurance and car payments. Ellington said he would not make any more payments, or maintain insurance, unless he got the title to the Mustang. Ellington says Hill told him he was in default.

- November or
  December 2021 ...... Westlake started servicing Ellington's loan. The exact date is unclear. It's undisputed that it occurred at least by December. *Compare Doc. 79-2 at 2 & 10 with Doc. 63 at 2.*

- December 2021 ...... Ellington made his first monthly payment to Westlake.

- January 2022 .......... Ellington made his second monthly payment to Westlake.

- February 2022 ........ Ellington made his third monthly payment to Westlake.

- March 2022.............Ellington wrecked the Mustang.
  He also made his fourth monthly
  payment to Westlake.

- April 2022...............Ellington missed his car payment and
  Westlake sought to collect the debt.

Ellington contends he was in default before Westlake began servicing the loan. He points to his conversations with Hill and Peanut in which he refused to make any more payments unless Posh gave him the title. *Doc. 86-1.* He also relies on the insurance tangles. Ellington's coverage lapsed at least twice before Westlake took over the loan. *Doc. 79-3 at 55; Doc. 86-2 at 41.*

No genuine dispute of material fact exists about the status of Ellington's account when Posh transferred it to Westlake. His performance of his contractual obligations was imperfect, especially about the insurance. He was in default whenever coverage lapsed. While Posh could have confirmed his default and exercised its remedies, the dealership did not do so. Ellington never missed a payment. And Posh worked through insurance lapses with him.

It is undisputed that he made all his monthly payments for fourteen months, from the time he bought the Mustang in January 2021 until April 2022. *Doc. 86 at 3; Doc. 79-2 at 12.* Under the parties' contract, Posh could have declared a default after Ellington's "no more payments" statements if the dealership "in good faith, believe[d]" he

–4–

wasn't going to pay. *Doc. 72-2 at 7*. But Posh never took any steps to do so. And Ellington can't rely on his testimony about Posh's statements (through Hill) that he was in default; what Ellington says she said is inadmissible hearsay. *American Home Assurance Co. v. Greater Omaha Packing Co., Inc.*, 819 F.3d 417, 429 (8th Cir. 2016). Hill testified under oath that she never said he was in default. *Doc. 86-2 at 75*.

The insurance back and forth doesn't equal a default at the time of transfer, either. The contract required Ellington to insure the Mustang. But it also permitted Posh to insure the vehicle and avoid default. *Doc. 72-2 at 8*. More importantly, Posh could forebear. "If any event of default occurs as to any of you, we *may* exercise our remedies against any or all of you." *Doc. 79-2 at 7* (emphasis added). Here, Posh worked with its customer, twice, on insurance. "By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again." *Ibid*. After each coverage lapse and insurance trouble, Posh worked with Ellington to resolve the issue and cure Ellington's default. *Doc. 79-3 at 40; Doc. 86 at 75 & 78*. Ellington now questions whether getting coverage through his mother's policy was a solid fix because she lacked an insurable interest. Posh accepted this fix, though. *Doc. 86-2 at 69 & 78*. That acceptance cured any default. Plus, the insurance lapses and fixes occurred in the spring and summer of 2021, several months before the fall 2021 transfer to Westlake.

Bottom line: On this record as a whole—the contract terms, the payment history, the insurance tangles, and the parties' dealings—no reasonable fact finder could conclude that Ellington was in default when Westlake received the account.

Ellington pleads that Westlake "purchased the note" and began servicing the loan in December 2021. *Doc. 63 at 2-4.* But he responds to the motion for summary judgment by arguing that Westlake didn't receive a valid assignment. *Doc. 85 at 2.* This no-assignment contention is new. Ellington is bound by his judicial admission about Westlake's status as servicer of the loan. *Missouri Housing Development Commission v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990). He never sought permission to amend his complaint. And a party may not amend his pleading in briefing. *Northern States Power Co. v. Federal Transit Administration*, 358 F.3d 1050, 1056-57 (8th Cir. 2004). It's unfair to the opposing party and gums up the orderly progression of the case. This legal principle applies with particular force where, as here, Ellington has amended his complaint several times and had an extended period to analyze the case. Last, the undisputed facts show Westlake's performance as the servicer of Ellington's loan by accepting payments from him and seeking collection after he stopped paying.

\*

Westlake's motion for summary judgment, *Doc. 79*, is granted.

So Ordered.

D.P. Marshall Jr.
United States District Judge

17 November 2025